# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLENE BIZICH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 11-861 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | Magistrate Judge Mitchell |
| FESTIVAL FUN PARKS, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Plaintiff Darlene Bizich ("Plaintiff") initially filed this cause of action on May 20, 2011, in the Court of Common Pleas of Westmoreland County, Pennsylvania. In her complaint, she alleges that she was injured on June 29, 2009, while riding the Wild Mouse roller coaster at Idlewild, an amusement park owned by Defendant. (Doc. 1-1 ¶¶ 3-6). Plaintiff asserts that her injuries were a result of Defendant's negligent failure to maintain and inspect the Wild Mouse, and alleges that "a post accident inspection of the subject car in which [P]laintiff was riding noted four (4) missing supporting screws" in the seat of the car in which she was riding. Id. ¶ 77. This case was removed to federal court on June 29, 2011, and was referred to a United States Magistrate Judge for pretrial proceedings, in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.C and 72.D of the Local Rules for Magistrate Judges. It was referred back to the undersigned for trial on January 16, 2013, and a jury trial currently is scheduled to commence on July 23, 2013.

Before this Court are several motions *in limine* filed by both parties.

1

A.  **Plaintiff's Motion To Exclude Evidence Of Unrelated Claims**

Plaintiff moves to exclude the introduction of evidence of prior claims for property damage, fire damage and workers' compensation filed by her husband, who is not a party to this suit. (Doc. 62 at 2). Plaintiff argues that such evidence is irrelevant and prejudicial, and thus precluded by Rules 402, 403 and 404 of the federal Rules of Evidence. Id. at 6-7. Additionally Plaintiff asserts that her husband was not present at the time of the accident, and has no personal knowledge of the facts of the case; moreover, she stresses in her motion that she does not intend to call him as a witness at trial. Id. at 2.

In its response, Defendant appears not to contest Plaintiffs arguments – at least with respect to the relevancy of this evidence to their case-in-chief. Instead, Defendant responds that Plaintiff's motion is premature because it "does not know if Mr. Bizich will be called on direct and/or rebuttal. If he is called on direct and/or rebuttal, [Defendant] is permitted to cross-examine Mr. Bizich regarding this evidence" pursuant to Rule 608 of the Federal Rules of evidence. (Doc 65 at 1-2).

Defendant provides no reason why Plaintiff's husband's prior history of claims would be relevant to its case-in-chief, and this Court can conceive of none on its own. Accordingly, this evidence is precluded under Rule 402, which prohibits the admission of irrelevant evidence. However, this decision is without prejudice to using this evidence for the purposes of impeachment on cross-examination, pursuant to Rule 608(b), if the circumstances at trial so warrant. **Any party wishing to introduce this evidence under Rule 608 shall seek the explicit permission of this Court prior to doing so.**

B.  **Defendant's Motions *In Limine***

Defendant moves to preclude the admission of a variety of evidence. These requests will be addressed below.

1. **The Opinions and Conclusions of Gabriel Alexander**

Defendant first argues that Plaintiff's expert witness, Gabriel Alexander ("Alexander"), is unqualified to present expert testimony. Rule 702 of the Federal Rules of Evidence states that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court of Appeals for the Third Circuit has interpreted Rule 702 to have three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). With respect to the second requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Id. at 244 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994)). The standard for "reliability is lower than the merits standard of correctness," id. at 247 (quoting Paoli, 35 F.3d at

744), and "Rule 702 . . . has a liberal policy of admissibility," id. at 243 (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir.1997)).

According to his *curriculum vita*, Alexander holds a B.S. in Mechanical Engineering, and has been working in that field since the 1980s. (Doc. 64-6 at 3). He has been involved in technical investigations since 1999, and is licensed as a professional engineer in every state except Oregon and Alaska. Id. at 64-6. His expert report concerns his opinions as to the reasons why the seat in Car #2 of the Wild Mouse came loose – namely, that the four wood screws used to hold the seat in place fell out. He further explains why he believes the screws fell out, methods that might have kept the screws in place, and alternate methods of securing the seat – one of which apparently having been adopted by Defendant after the alleged incident – which would have reduced the probability of this type of failure. See, generally, (Docs. 64-1 – 64-3). The record indicates that Alexander based his opinions on, *inter alia*, Defendant's answer to the complaint, photographs of the site and of Car #2, a video of the site, inspections of Cars #2 and #3, Defendant's discovery responses, the deposition testimony of various witnesses, first aid and other medical reports, and Defendant's record of the incident. (Doc. 64-1 at 3-4). This information appears to have included portions of the Wild Mouse's operations manual from its manufacturer. See id. at 19-21.

Defendant makes a variety of mostly generalized arguments in support of its attempt to exclude Alexander's expert opinions as a whole. First, Defendant asserts that Alexander lacks the education and work experience necessary to render an expert opinion on the Wild Mouse or the cause of Plaintiff's alleged injuries, because he lacks training related to "the design, production, operation, inspection, or maintenance of amusement park rides . . . ." Id. at 3, 6. Plaintiff responds that Alexander is qualified by virtue of the fact that he has been a professional

4

engineer for over 34 years, and that his opinions are based on accepted engineering principles. (Doc. 67 at 3). Second, Defendant asserts that Alexander's opinions are "not scientifically valid and are totally unreliable." (Doc. 64 at 6). Defendant stresses that, in forming his conclusions, Alexander performed no dynamic testing on the Wild Mouse, and, as such, "he cannot say there is any difference between the effect on body motions and interaction with a Wild Mouse car when the seat is secured and unsecured as [the] car travels over its course." Id. at 10. Plaintiff responds that Alexander's methods were sufficiently reliable to withstand scrutiny under Rule 702's flexible standard, and that Defendant's arguments are, at best, an issue of the weight of the evidence, which is best left to a jury. (Doc. 67 at 5-6). Third, Defendant finds fault with the fact that Alexander neither constructed his proposed modifications, nor submitted them to dynamic testing. (Doc. 64 at 11-13). Plaintiff responds that the issues in the instant cause of action are not so complex to require such action for Alexander to form his opinions and, in any event, Defendant has implemented one of Alexander's suggested modifications post-accident. (Doc. 67 at 7). Fourth, Defendant argues that Alexander's opinions should be excluded, essentially for the reasons raised in point three. See (Doc. 64 at 13-18). Fifth, Defendant asserts that Alexander's proffered opinions will not assist the trier of fact because they are not sufficiently reliable, characterizing them merely as "unsupported speculation." (Doc. 64 at 18). Finally, Defendants attack Alexander's opinions under Rule 403, claiming that they lack probative value and are highly prejudicial. (Doc. 64 at 19).

Alexander's education as a mechanical engineer, his years of practicing that profession, and his lengthy employment as a forensic investigator all support Plaintiff's position. Additionally, Alexander's report is not related to some subtle or complex point of roller coaster design – it is about why the four wood screws securing Plaintiff's seat in Car #2 failed, and why

5

Defendants, in Alexander's opinion, were negligent in maintaining such a configuration. All of this is well within the ambit of Alexander's education and experience, as reflected in his CV.

Additionally, while the bases for Alexander's reasoning are at times opaque, his conclusions are at least arguably supported by the evidence and reasoning recited in his report. While dynamic testing of the Wild Mouse with the original seat configuration and Alexander's proposed modifications might have been ideal, its lack is not fatal to Alexander's status as an expert witness. To the contrary, Alexander provided explanations for his reasoning referencing the forces and conditions that he believed the seat would experience and, importantly, his conclusions are testable and at least arguably reliable. To the extent that Defendant find fault with Alexander's conclusions, they are welcome to present their own expert's analysis of the incident to a jury. Furthermore, in spite of Defendant's general argument to the contrary, this Court can discern no unfair prejudice or confusion that would arise from Alexander's opinions, as expressed in his report. Accordingly, under Rule 702's flexible standard, Alexander's expert opinion is admissible.

### 2. Facts And Opinions Not Expressed In Alexander's Report

Defendant next moves for an order limiting Alexander's testimony to the four-corners of his expert report, pursuant to Rules 26(a)(2)(A)-(B) of the Federal Rules of Civil Procedure, without which, it argues, it "will be unfairly subjected to trial by ambush." (Doc. 64 at 19). Plaintiff responds that this motion "borders on the edge of paranoia, and confining an expert witness to his report (where he was also deposed) is not recognized in practice or procedure by this District Court." (Doc. 67 at 9). In support of this assertion, Plaintiff cites to an order issued by this Court in 1981 – 12 years prior to the 1993 amendments to Rule 26 incorporating the

portions of that Rule relied upon by Defendant. See McElroy v. Cessna Aircraft Co., 506 F. Supp. 1211, 1216 (W.D. Pa. 1981).

In spite of Rule 26's strong language requiring "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them[,]" Fed. R. Civ. P. 26(a)(2)(B)(i), courts within the Third Circuit have held that experts may testify as to matters outside the report if that information was within the scope of the report, and does not present unfair surprise to the objecting party. See nCube Corp. v. SeaChange Int'l, Inc., 809 F. Supp. 2d 337, 347-48 (D. Del. 2011). One such scenario is where that information was presented to the opposing party during deposition. Id. at 347; see also Siemens Medical Sol'ns USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269, 1285-87 (Fed. Cir. 2011) (affirming the decision from the District of Delaware limiting expert testimony to what was presented in the report and during his deposition). Accordingly, Alexander will be allowed to testify as to matters that are "consistent with the report and [are . . .] reasonable [syntheses] and/or elaboration[s] of the opinions contained" therein, nCube, 809 F.Supp. 2d at 347 (internal quotes and citations omitted), including matters addressed during his deposition. Matters outside of this scope, however, must be excluded.

### 3. Evidence Of Design Defect With, And Alternative Designs For, The Configuration Of The Seat Of The Wild Mouse Rollercoaster

Defendant next argues that evidence of a defect in the design of the seat of Car #2 of the Wild Mouse rollercoaster, as well as evidence of alternative designs of the seat, must be precluded under Rule 402 and 403, as Plaintiff's claim is for "negligent failure to maintain/inspect[.]" (Doc. 64 at 20-21). Plaintiff responds that it will not present evidence of a

design defect, but that Alexander's opinion that the vertical placement of fasteners, where removal and replacement would occur during the course of maintenance, would promote the very type of failure alleged in this case, and thus is relevant. (Doc. 67 at 10). Given that Alexander's proposed modifications go right to the heart of whether Defendant was negligent in its maintenance and inspection of the roller coaster – and are presented as such in his report – they clearly are relevant. Additionally, the undersigned can discern no unfair prejudice or possibility of confusion that would result from presenting them to a jury in that context – especially given Plaintiff's assertion – to which she will be held – that she does not wish to present evidence of a design defect.

4. **Evidence Relating To The Design, Production, Operation And/Or Condition Of Any Idlewide Park Amusement Ride/Products Or Wild Mouse Car Other Than The Subject Car #2**

Plaintiff's alleged injury occurred while she was in Car #2 of the Wild Mouse roller coaster, and her claim is based on the negligent inspection and maintenance thereof. As such, Defendant asserts that evidence relating to any car other than Car #2 would be irrelevant and prejudicial, and seeks to preclude the same pursuant to Rule 402 and 403. (Doc. 64 at 21-22). Plaintiff responds that all of the cars of the Wild Mouse are identical, and that Alexander's observations of Car #3 – which she asserts was provided to Alexander for inspection as "an exemplar" of Car #2 because the same was unavailable – support his conclusions and therefore are relevant. (Doc. 67 at 11 and n.4). It is noteworthy that, in its reply, Defendant did not contest that it had provided Car #3 to Plaintiff as an exemplar of all the cars on the Wild Mouse. It is clear from a reading of the report that Alexander's analysis of Car #3, the manner in which

8

its seat is configured, and the conclusions that he derived from that inspection, would be applicable to Car #2 as well. Indeed, his later examination of Car #2 confirms that fact. As such, his examination of Car #3 is relevant, and this Court can discern little or no unfair prejudice or potential for confusion that would flow from it.

5. **Evidence Relating To The "As Built" Design Or Attachment Of The Seat Of Car #2 When It Departed Its Manufacturer's Control And/Or The Control Of Any Owner Prior To Defendant AND Alexander's Opinion That The Design Of The Incident Seat Cushion Connection Was Modified From That Depicted In The Original Design Drawings**

Defendant seeks to preclude Alexander's opinion regarding the manner in which Car #2 was designed, and its seat was attached, at the time of its construction. Defendant asserts that Alexander has no evidence of these things, and that he has admitted to having no knowledge of how the seat was mounted and attached at the time of its manufacture, or during the period of time the roller coaster was in the possession of its earlier owners. (Doc. 64 at 23). Thus, his opinion is mere speculation, irrelevant and unfairly prejudicial, and should be excluded under Rules 402 and 403. Id. at 23-24. Plaintiff responds that Alexander's opinions are based on architectural drawings of the Wild Mouse provided by Defendant during discovery. If Defendant's expert has a different interpretation, each party should be permitted to provide these conflicting assessments to a jury. (Doc. 67 at 11-12).

Plaintiff has presented schematics that indicate that the seat on the Wild Mouse was configured in a certain manner when it left its manufacturer. Defendant's arguments as to why that should be precluded are unpersuasive. However, there is no indication that Alexander has

any knowledge of when that configuration was changed, and it is undisputed that the Wild Mouse was owned by other parties prior to being purchased by Defendant. Accordingly, Alexander may testify as to his interpretation of the schematics, but may not testify regarding who – if anyone – changed the seat's configuration, as it is clear that would be pure speculation.

6. **Evidence Of Repairs And/Or Alterations Of The Wild Mouse Seat Configuration After The Incident In Question**

Defendant next asserts that evidence of changes to the configuration of the Wild Mouse's seats made subsequent to the incident is inadmissible under Rule 407 of the Federal Rules of Evidence. (Doc. 64 at 25-26). Plaintiff concedes that such evidence is generally prohibited under Rule 407 – however, she notes that there are several exceptions to that Rule which might be applicable if Defendant were to open the door to them. As such, Plaintiff argues that it would be premature to rule on this motion at this time. (Doc. 67 at 10).

To the extent that Plaintiff would use evidence of subsequent remediation as part of its case in chief, Defendant's motion must be granted. However, this decision is without prejudice to Plaintiff revisiting this issue at trial, if appropriate, should Defendant open the door to one of Rule 407's exceptions. **Plaintiff shall seek explicit permission from this Court prior to attempting to introduce such evidence.**

7. **The Web Pages And/Or Publications And Portions Thereof Reference In Gabriel Alexander's Report As Attachments 41-50F**

Finally, Defendant seeks an order prohibiting the admission of certain attachments to Alexander's expert report, arguing that they are irrelevant and unfairly prejudicial because they

10

do not concern "the design, production, operation, inspection, or maintenance of roller coasters in general or the Wild Mouse." (Doc. 64 at 26-27). Plaintiff counters that this case is not about the design of a roller coaster, but about the allegedly negligent maintenance and inspection of wood screw fasteners holding the seat in place in Car #2. (Doc. 67 at 13). These attachments contain "the type of data typically relied upon by experts and likely also carpenters and mechanics who are involved in woodwork." Id.

Here, Plaintiff's argument is persuasive, at the very least, because these attachments show, at least arguably, the wide availability of knowledge and products that could be used to repair the asserted cause of the failure of the seat in Car #2. Accordingly, these attachments are relevant. Additionally, Defendant's bare assertion aside, this Court can discern no unfair prejudice or confusion that would result from their admission. Accordingly, this portion of Defendant's omnibus motion is denied.

AND NOW, this 27th day of June, 2013,

IT IS HEREBY ORDERED that Plaintiff's motion *in limine* (Doc. 62) is GRANTED in part, and DENIED in part, as more fully stated in this Order.

IT IS FURTHER ORDERED that Defendant's omnibus motion *in limine* (Doc. 63) is GRANTED in part, and DENIED in part, as more fully stated in this Order.

BY THE COURT:

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES DISTRICT JUDGE

cc (via CM/ECF):
All counsel of record